WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric M. Rinestone, individually; Michael Wilson, individually and in his capacity as Trustee of the Michael Wilson Trust Agreement Dated June 19, 2000, an Arizona Trust; Buckeye Sundance, LLC, an Arizona limited liability company, and 328 Desert Highlands, LLC, an Arizona limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>Enterprise Bank & Trust, a Missouri corporation,<br><br>Defendant. | No. CV 11-02381-PHX-NVW<br><br>**ORDER** |

Before the Court are the "Motions to Intervene and Dismiss Plaintiffs' Claims by Federal Deposit Insurance Corporation, as Duly Appointed Receiver for First National Bank of Olathe" (Doc. 10). This motion also includes an alternative motion to transfer to the District of Kansas or the District of the District of Columbia. For the reasons stated below, the motion to intervene will be granted but the motions to dismiss or to transfer will be denied.

**I.   BACKGROUND**

For purposes of this motion, the allegations in Plaintiffs' complaint (Doc. 5) are accepted as true. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). According to those allegations, Plaintiff Buckeye Sundance, LLC, is an Arizona entity in the business of developing real estate. In May 2005, Buckeye Sundance took out a $2

million construction loan from the First National Bank of Olathe ("Bank of Olathe"). The purpose of the loan was to acquire and develop certain property in Buckeye, Arizona. In August 2008, Buckeye Sundance and Bank of Olathe converted the loan from a construction loan to a straight term land loan secured by the Buckeye property.

Plaintiff 328 Desert Highlands, LLC, is also an Arizona entity in the business of developing real estate. In June 2005, 328 Desert Highlands took out a $2.1 million loan from Bank of Olathe for the purpose of purchasing and remodeling an investment home in Scottsdale, Arizona. Bank of Olathe and 328 Desert Highlands have renegotiated the terms of this loan on a number of occasions, mostly to extend its maturity date.

Plaintiffs Eric Rinestone and Michael Wilson (collectively, "Guarantors") apparently control both Buckeye Sundance and 328 Desert Highlands, and they personally guaranteed the Bank of Olathe loans made to those entities. Sometime before August 2011, they renegotiated their guaranty agreements to add rights of first refusal, should Bank of Olathe offer to sell the Buckeye Sundance and 328 Desert Highlands loans. The Guarantors wanted such rights because they had developed a flexible and cooperative business relationship with Bank of Olathe, and they feared that a new lender might not work with them as cooperatively. The Guarantors "also wanted to be able to receive the benefit of any discounted value [Bank of Olathe] or its successors were willing to accept for the loans." (Doc. 5 ¶ 14.)

On August 12, 2011, Bank of Olathe went into receivership, with the Federal Deposit Insurance Corporation (FDIC) as receiver. That same day or shortly afterwards, the FDIC announced that Defendant Enterprise Bank & Trust had bought certain Bank of Olathe assets, including the Buckeye Sundance and 328 Desert Highlands loans. Part of the sale and purchase agreement between the FDIC and Enterprise was a "loss-sharing" agreement. Plaintiffs allege on information and belief that Enterprise paid and continues to pay for the Bank of Olathe assets through a complicated structure that takes recoveries and losses into account, along with various costs, risks, and other factors.

The Guarantors received no notice beforehand of Enterprise's purchase. The FDIC did not offer the Guarantors their rights of first refusal. Soon after the purchase, Buckeye Sundance and 328 Desert Highlands began withholding their loan payments from Enterprise, claiming that Enterprise is not the rightful owner of the loan documents in light of the Guarantors' neglected rights of first refusal. Enterprise denies that acquiring the Buckeye Sundance and 328 Desert Highlands loans from the FDIC triggered the right of first refusal. Enterprise has declared those loans to be in default and has threatened to begin foreclosure and other collection proceedings against all Plaintiffs.

## II.     PROCEDURAL POSTURE

In November 2011, Plaintiffs sued Enterprise in Maricopa County Superior Court. Enterprise then removed to this Court claiming diversity of citizenship jurisdiction. Soon after, Plaintiffs amended their complaint to state causes of action for declaratory relief, specific performance, and constructive trust/unjust enrichment. The declaratory relief claims ask this Court to resolve the parties' rights and obligations in light of the rights of first refusal. A separate declaratory relief claim asks for a declaration that the Guarantors would not be liable under Arizona's anti-deficiency statute, A.R.S. § 33-814(G), on any deficiency after a trustee's sale of the property securing the 328 Desert Highlands loan (the Scottsdale investment home). The specific performance claims ask that Enterprise be required to transfer the disputed loans to the Guarantors on the terms Enterprise acquired them from the FDIC. The constructive trust/unjust enrichment claims assert that Enterprise has been unjustly enriched because it acquired the disputed loans "at what is believed to be a material discount and/or under loss-sharing terms that greatly diminish the investment risk of the parties while maximizing the return on investment — all rights that now belong to Guarantors." (Doc. 5 ¶ 52; *see also id.* ¶ 57.) However, at oral argument Plaintiffs reduced this to a claim to constructive trust in the transaction documents so as to prevent a further transfer.

Also in November 2011, the FDIC sent a notice to Plaintiffs stating, "[Y]ou may have a claim against the Failed Institution [*i.e.*, Bank of Olathe]" and requiring Plaintiffs

1    to submit proof of that claim or risk forfeiting it. (Doc. 17-4 at 2.) Plaintiffs submitted
2    such a claim, explaining the dispute at issue in this lawsuit and attaching the complaint,
3    but also asserting that they did so only out of an abundance of caution because they do
4    not believe the FDIC claims process applies to their dispute with Enterprise. (Doc. 17-5.)
5    They noted that, if damages were appropriate, such damages would range from $300,000
6    to $1.2 million. (*Id.* at 4.)

7    The FDIC then moved to intervene and to dismiss Plaintiffs' claims for failure to
8    exhaust the claims through the FDIC's administrative process.

9    By letter dated April 9, 2012, the FDIC informed Plaintiff Buckeye Sundance that
10   it "has reviewed [its] claim against the receivership" for "$300,000.00" and "Disallowed
11   [it] in Full as not being proven to the satisfaction of the Receiver." (Doc. 27-1 at 2.) The
12   letter went on to inform Buckeye Sundance that 12 U.S.C. § 1821(d)(6) grants them a
13   right to file a lawsuit in the district encompassing Bank of Olathe (the District of Kansas)
14   or the District of the District of Columbia. The Court has not been informed whether the
15   FDIC has addressed any other Plaintiff's claims submission.

16   **III.    ANALYSIS**

17   Plaintiffs consented to intervention at oral argument. Therefore, the FDIC's
18   Motion for Intervention will be granted and the substantive issues raised by the FDIC will
19   be addressed.

20   One whose right of first refusal has been violated has an action for damages or
21   specific performance against both the seller and the purchaser with actual or constructive
22   notice of the right. *Meyer v. Warner*, 104 Ariz. 44, 47, 448 P.2d 394, 397 (1968) ("In the
23   event the [property is conveyed without offering a right of first refusal] . . . [t]he court
24   may order the purchaser to reconvey the property to the vendor, or order the purchaser to
25   convey the property to the [party holding the right of first refusal]." (citations omitted));
26   *Phipps v. CW Leasing, Inc.*, 186 Ariz. 397, 400, 923 P.2d 863, 866 (Ct. App. 1996) ("a
27   buyer with actual or constructive notice of the right of first refusal takes the land subject
28   to the right of first refusal and may also be subject to damages or specific performance");

*see also* 25 Richard A. Lord et al., *Williston on Contracts* § 67:85 (4th ed.) ("When an owner has breached an agreement granting a right of first refusal to purchase property, specific performance is an available remedy to compel the conveyance of the premises to the right holder.").

Under normal circumstances, this is the law that would govern Plaintiffs' claim against Enterprise. Plaintiffs have an election of specific performance or damages against Enterprise or the FDIC as receiver for Bank of Olathe. Plaintiffs have elected to pursue Enterprise Bank, not the FDIC. Though Plaintiffs have pleaded various remedies (including some that may not exist), it is clear that specific performance would leave Enterprise whole (though perhaps without a profit) and the FDIC in the same position as when Enterprise held the contracts.

The FDIC nonetheless contends that these issues may not be adjudicated by a district court without first exhausting them through the FDIC's statutory claims process. The FDIC further contends that any issues exhausted through its claims process can only be reviewed by a court in the District of Kansas or the District of the District of Columbia. A thorough analysis of the statute under which the FDIC operates shows that the FDIC is mistaken.

**A.     The FDIC's Statutory Power to Resolve "Claims"**

In response to the savings and loan crisis of the late 1980s, Congress enacted the Financial Institutions Reform and Recovery Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA"). FIRREA's purpose was "to enable the federal government to respond swiftly and effectively to the declining financial condition of the nation's banks and savings institutions. The statute [thus] grants the FDIC, as receiver, broad powers to determine claims asserted against failed banks." *Henderson v. Bank of New England*, 986 F.2d 319, 320 (9th Cir. 1993).

The claims process is conducted entirely on paper, beginning with the FDIC "publish[ing] a notice to the depository institution's creditors to present their claims . . . by a date specified . . . not less than 90 days after the publication of such notice." 12

- 5 -

U.S.C. § 1821(d)(3)(B)(i). The FDIC must also "mail a notice similar to the [published] notice . . . to any creditor shown on the institution's books . . . or [¶] . . . [any] claimant not appearing on the institution's books within 30 days after discovery of such [claimant]." *Id.* § 1821(d)(3)(C).

The mailed notice is largely a form letter. In this case, the letter stated, "The Receiver has discovered that you may have a claim against the Failed Institution. If you do not have a claim against the Failed Institution, please disregard this notice." (Doc. 17-4 at 2.)

If the recipient of the letter believes it has a claim, it can then file it on an FDIC-drafted "proof of claim" form. (*See* Doc. 17-5 at 2 (Plaintiffs' proof of claim).) That proof of claim form is a fill-in-the-blank template that begins in relevant part as follows:

> The undersigned _____
> (Name of person completing the Proof of Claim)
>
> hereby states that the subject Financial Institution, now in liquidation ("Failed Institution"), is indebted
>
> to _____ (the "Claimant") in the sum of
>    (Name of Claimant)
>
> $ _____

(Doc. 17-5 at 2.)[1] The form also provides a space in which to explain that claim.

During the claims process, the FDIC's statutory duty is to determine whether a claim has been "proved to [its] satisfaction." 12 U.S.C. § 1821(d)(5)(B), (D)(i). The FDIC has power to subpoena witnesses and documents when resolving "claim[s] against the [failed] institution," although such subpoenas must be authorized by its board of directors or their designees. *Id.* § 1821(d)(2)(I)(i)–(ii). If the FDIC ultimately "allows" the claim, it has statutory power to "pay" it. *Id.* § 1821(d)(10). If it "disallows" the claim, it must provide the claimant with "a statement of each reason for the disallowance" and information on how to dispute that resolution. *Id.* § 1821(d)(5)(A)(iv).

---

[1] *See also* http://www.fdic.gov/bank/individual/failed/proof_of_claim_form.pdf.

In either event, the FDIC informs the claimant of its determination by mail. *Id.* § 1821(d)(5)(A)(iii). That mailing is largely a form letter with a line for "Claim Amount" and boilerplate language, which in Buckeye Sundance's case reads as follows:

> The FDIC as Receiver for The First National Bank of Olathe has reviewed your claim against the receivership. After a thorough review of your filed claim along with your supporting documentation, the Receiver has determined to disallow your claim for the following reason(s):
>
> Your claim has been Disallowed in Full as not being proven to the satisfaction of the Receiver.

(Doc. 27-1 at 2.)

Upon disallowance, the claimant has sixty days to file an action in federal district court in the district where the failed bank is headquartered, or in the District of the District of Columbia. 12 U.S.C. § 1821(d)(6). In such a lawsuit, the FDIC's actions are subject to *de novo* review. *Freeman v. FDIC*, 56 F.3d 1394, 1400 (D.C. Cir. 1995).

Just as the FDIC's own forms bear out — repeatedly asking for the dollar amount by which the "Failed Institution" is "indebted" to the claimant — "claim" in FIRREA thus refers to claims for money, either directly from the bank in receivership or through rights to its assets. *See also* 12 U.S.C. § 1821(d)(4)(B)(i) (governing "settle[ment of] all uninsured and unsecured claims on the receivership with a final settlement payment"), (d)(5)(C)(ii)(II) (permitting consideration of late-filed claims if, among other things, "such claim is filed in time to permit payment of such claim"), (d)(5)(D)(i) ("The receiver may disallow any portion of any claim by a creditor or claim of security, preference, or priority which is not proved to the satisfaction of the receiver."), (d)(5)(D)(ii) (regarding payments to undersecured creditors), (d)(8)(A)(i) (establishing an expedited process for claims "alleg[ing] the existence of legally valid and enforceable or perfected security interests in assets of any depository institution for which the Corporation has been appointed receiver"), (d)(10) (prescribing procedures for "pay[ing]

creditor claims," potentially with interest), (d)(11)(A) (establishing priorities for "distribut[ing]" amounts realized from liquidation "to pay claims").

### B.  "Susceptible of Resolution"

The FDIC's motion to dismiss for lack of subject matter jurisdiction is based on the following statute:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D). The "otherwise provided in this subsection" phrase refers to 12 U.S.C. § 1821(d)(6) — the paragraph permitting district court review of the FDIC's disallowance of claims, if the action is brought in the district encompassing the failed bank's headquarters or the District of the District of Columbia.

In this action, clause (i) does not apply because it "applies only in an action against the FDIC as receiver," *Henrichs v. Valley View Dev.*, 474 F.3d 609, 614 (9th Cir. 2007), and Plaintiffs are not suing the FDIC. *See also Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1212–13 (9th Cir. 2012) (explaining that *Henrichs*' holding, although phrased to apply to all of subparagraph (D), applies only to clause (i)). Thus, this case turns on clause (ii), *i.e.*, whether Plaintiffs assert a "claim relating to any act or omission of [a bank in receivership] or the [FDIC] as receiver."

If separated from its statutory context, this language could sweep in Plaintiffs' claims because they would not exist but for the FDIC's failure to honor the right of first refusal. But the courts do read this language in its statutory context. "Courts interpreting the broad language of [clause (ii)] have universally concluded that this provision bars

only claims that could be brought under the administrative procedures of § 1821(d), not any claim at all involving the FDIC." *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 921 (2d Cir. 2010); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1142 (D.C. Cir. 2011) ("In FIRREA, the word 'claim' is a term-of-art that refers only to claims that are resolvable through the FIRREA administrative process, and the only claims that are resolvable through the administrative process are claims against a depository institution for which the FDIC is receiver.").

In this regard, the Third Circuit established a widely accepted test, holding that "clause (ii) encompasses [only] claims that are . . . *susceptible of resolution* through the claims procedure." *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 394 (3d Cir. 1991) (emphasis added). *Rosa*'s facts illustrate what was meant by that standard. The plaintiffs there had filed suit regarding an ERISA-covered retirement plan established by a bank that eventually went into Resolution Trust Corporation (RTC) receivership.[2] The RTC organized a new bank and transferred certain assets of the old bank to the new bank, including the retirement plan. The RTC, as conservator for the new bank, then decided that it could not service the plan and declared it terminated retroactive to the date the RTC took over (as if the new bank had never assumed the plan and it was merely a liability with the old bank). The *Rosa* plaintiffs then sued for monetary relief as well as an order enjoining retroactive termination. *Id*. at 388–90. The Third Circuit held that certain of the monetary claims fell within clause (i) and were therefore barred absent administrative exhaustion. *Id*. at 393–94. However, as to the injunction request, the Third Circuit found itself "at a loss to understand how RTC would 'determine,' or 'allow' or 'disallow,' a claim seeking an order barring retroactive termination of the plan, or how it would 'pay' such a claim if allowed." *Id*. at 395. The court therefore held that such a claim was not susceptible of resolution through the claims procedure and therefore not subject to exhaustion under clause (ii).

---

[2] The RTC, while it existed, was governed by the same statutes as the FDIC. Any analysis with respect to the RTC is therefore applicable to the FDIC.

### C. Susceptibility of Resolution and Fair Notice in this Case

The Ninth Circuit agrees that clause (ii) only applies to claims "'susceptible of resolution through the [FDIC] claims procedure.'" *Henderson*, 986 F.2d at 321 (quoting *Rosa*, 938 F.2d at 394) (alteration added). The FDIC has never clearly articulated how it can resolve Plaintiffs' claims against Enterprise. Nothing in FIRREA gives the FDIC adjudicatory authority over Enterprise through its claims process. The FDIC has power to subpoena witnesses and documents when resolving "claim[s] against *the [failed] institution*," 12 U.S.C. § 1821(d)(2)(I)(i) (emphasis added), but nothing in FIRREA permits the FDIC to set itself up as a compulsory neutral factfinder and arbiter of disputes between others. The FDIC has failed to provide any explanation of how its claim process in this case could determine whether to "allow" or "disallow" Plaintiffs' claims against Enterprise — and if it had allowed the claims, how the FDIC would have "payed" them. *See Rosa*, 938 F.2d at 395. Indeed, at oral argument, the FDIC disclaimed ability to order the specific performance Plaintiffs seek against Enterprise. Thus, the claims Plaintiffs actually assert against Enterprise are not susceptible of resolution through the claims process.

At oral argument, however, counsel for the FDIC for the first time announced two other theories through which Plaintiffs' claims might be susceptible of resolution. Neither of these theories succeeds.

#### 1. The Contractual Buy-Back Provisions

First, counsel alluded to terms in the FDIC's purchase and sale agreement with Enterprise which permit the FDIC to buy back the loans at issue. Counsel has never submitted the agreement to this Court and could not himself fully explain what the relevant terms are. However, assuming counsel meant to say that the FDIC could resolve Plaintiffs' claim against Enterprise by buying back the loans at issue and then offering Plaintiffs their rights of first refusal before any other sale, the FDIC's argument fails.

This argument makes susceptibility of resolution contingent on the FDIC's contractual arrangements with respect to third parties, not its authority to resolve

"claims" under FIRREA. In addition, the FDIC has not explained how such a resolution would actually work in practice. Plaintiffs received a notice that they "may have a claim against the Failed Institution." Plaintiffs then had an opportunity to fill out a form explaining how the failed bank is "indebted" to them in a specific dollar amount. This falls far short of communicating that claims for specific performance against the successor bank can and must be resolved through the FDIC's process because the FDIC has a contractual right to buy back the contracts and then offer them to Plaintiffs.

Assuming Plaintiffs understood this then-secret theory, the FDIC has further failed to explain how the claims processor handling Plaintiffs' proof-of-claim form would decide if such the specific performance claim had been "proved to [its] satisfaction." 12 U.S.C. § 1821(d)(5)(B), (D)(i).

Plainly this is not "susceptible of resolution" within the claims process. Nothing in FIRREA authorizes the FDIC to use its statutory powers to resolve "claims" in this manner. Moreover, if this were a "claim" subject to the FDIC's process, the FDIC failed in its statutory duty to provide adequate notice of it. *See* 12 U.S.C. § 1821(d)(3)(B)(i), (C).

### 2. Transfer Without Trigger

The FDIC's second "susceptible of resolution" theory (again, advanced for the first time at oral argument) is that the sale of the loans at issue to Enterprise did not trigger the rights of first refusal. The FDIC relies on a portion of FIRREA which gives it power to "transfer any asset or liability of the institution in default . . . without any approval, assignment, or consent." *Id.* § 1821(d)(2)(G)(i)(II). But if the FDIC's interpretation of this statute is valid, it is a substantive defense for Enterprise, not a bar to jurisdiction. It has no bearing on whether Plaintiffs' claims against Enterprise are "susceptible of resolution" in the FDIC's administrative claims system. This theory therefore fails.

### D. The Specific Performance Claim Against Enterprise Bank Is Not a Veiled Money Damage Claim Against the FDIC

The FDIC also insists that it does not need to show how Plaintiffs' claims against Enterprise are "susceptible of resolution" because, it argues, Plaintiffs' claims are in fact veiled monetary claims against the FDIC as receiver. The Ninth Circuit recently addressed "whether FIRREA's jurisdictional bar [*i.e.*, clause (ii)] can apply to claims against parties other than failed banks or the FDIC." *Benson*, 673 F.3d at 1214. The court concluded:

> We agree with [certain other] circuits that FIRREA's jurisdictional bar applies to claims asserted against a purchasing bank when the claim is based on the conduct of the failed institution. And although we recognize the D.C. Circuit's holding in *American National Insurance* [*v. FDIC*, 642 F.3d 1137 (D.C. Cir. 2011)] has a different formulation than the approach in *Village of Oakwood* [*v. State Bank & Trust Co.*, 539 F.3d 373 (6th Cir. 2008)], we have no need to resolve any potential tension between the two in this case. The bulk of plaintiffs' claims plainly qualify as "*functionally*, albeit not *formally*" against a failed bank. *Am. Nat'l Ins. Co.*, 642 F.3d at 1144.
>
> Plaintiffs' complaints[, although nominally directed at a successor bank,] are based almost exclusively on alleged malfeasance by [a failed bank in FDIC receivership]. They claim that [the failed bank] knowingly provided banking services [to a Ponzi scheme]. They argue that [the successor bank] is liable for this conduct because it assumed [the failed bank]'s liabilities pursuant to a purchase and assumption agreement with the FDIC. By relying on [the failed bank]'s alleged wrongdoing, plaintiffs' claims plainly "relat[e] to any act or omission" of "a depository institution for which the [FDIC] has been appointed receiver." § 1821(d)(13)(D)[(ii)]. And because plaintiffs did not exhaust administrative remedies, their claims are jurisdictionally barred by FIRREA.

*Id.* at 1214–15 (footnote omitted).

Here, Plaintiffs have sued only Enterprise, as permitted by state contract law, and no authority suggests that FIRREA intended to preempt state contract law. To the

- 12 -

contrary, "FIRREA does not preempt state contract law, both because the language of the statute does not indicate that Congress intended to preempt such a broad area of state law and because of the potential constitutional problems with so holding." *Sharpe v. FDIC*, 126 F.3d 1147, 1156 (9th Cir. 1997), *abrogated in part on other grounds by McCarthy v. FDIC*, 348 F.3d 1075 (9th Cir. 2003); *see also Waterview Mgmt. Co. v. FDIC*, 105 F.3d 696, 698 (D.C. Cir. 1997) (holding that FDIC's power to transfer contracts without approval does not give the FDIC power to "preempt" contractual provisions that would otherwise require such approval).

This case stands in contrast to *Benson* and *Village of Oakwood* (discussed in *Benson*). In *Benson*, the bulk of the complaint made accusations against the bank in receivership, with very little connection to the successor bank. *See Benson*, 673 F.3d at 1209–11. In *Village of Oakwood*, the complaint accused the successor bank of aiding and abetting the FDIC's primary breach of fiduciary duty, absent which (the plaintiffs claimed) the FDIC would have had more money to pay uninsured depositors. *See Village of Oakwood*, 539 F.3d at 376. In both, the claims were for damages against the failed bank or the FDIC-as-receiver, even though not stated as such.

Such is not the case here. Plaintiffs opted to sue a party whom established contract law permits them to sue. And unlike the plaintiffs in *Benson* and *Village of Oakwood*, Plaintiffs here are not seeking veiled relief against the FDIC. Rather, they are seeking the most direct relief possible — specific performance from the party holding the contract with the right of first refusal. Thus, Plaintiffs have not strategically drafted their complaint to avoid the FDIC's administrative process.

Again, the "susceptible of resolution" test governs. Although *Benson* could be read broadly when it says that "that FIRREA's jurisdictional bar applies to claims asserted against a purchasing bank when the claim is based on the conduct of the failed institution," *Benson*, 673 F.3d at 1214, *Benson* also reaffirms the "susceptible of resolution" requirement, *id*. at 1213, and must be interpreted in that light. Thus, *Benson* only requires administrative exhaustion of "claims asserted against a purchasing bank . . .

based on the conduct of the failed institution" that are "susceptible of resolution" within the FDIC's claims process. As discussed in detail above, Plaintiffs' claims are not so susceptible. The FDIC's motions to dismiss will be denied.[3]

## IV. THE FDIC'S ALTERNATIVE MOTION TO TRANSFER

The FDIC alternatively moves to transfer based on 12 U.S.C. § 94, which provides:

> Any action or proceeding against a national banking association for which the Federal Deposit Insurance Corporation has been appointed receiver, or against the Federal Deposit Insurance Corporation as receiver of such association, shall be brought in the district or territorial court of the United States held within the district in which that association's principal place of business is located, or, in the event any State, county, or municipal court has jurisdiction over such an action or proceeding, in such court in the county or city in which that association's principal place of business is located.

But Plaintiffs are not suing a bank in FDIC receivership, nor the FDIC itself. This statute does not apply. The alternative motion to transfer will be denied.

## V. VALIDITY OF WAIVER OF THE ANTI-DEFICIENCY STATUTE

The FDIC and Enterprise also challenge the legal sufficiency of Plaintiff's declaratory judgment claim that the waiver of the anti-deficiency statute, A.R.S. § 33-

---

[3] A few of the cases the FDIC cites have gone beyond FIRREA. For example, the authorities relied upon in *Beal Bank Nevada v. Business Bank of St. Louis*, No. 4:11 CV 561 DDN, 2011 WL 3444241 (E.D. Mo. Aug. 8, 2011), are actually grounded in the *D'Oench, Duhme* doctrine, *see id.* at *5 (citing *FDIC v. Newhart*, 892 F.2d 47, 50 (8th Cir. 1989) and *American First Federal, Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 n.3 (11th Cir. 1999)). The *D'Oench, Duhme* doctrine — named for *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942) — holds as a matter of federal common law that the FDIC may assert the defense of estoppel to bar a claim against it as receiver when that claim is based on an alleged agreement which does not appear in the failed bank's records (such as an oral agreement). *D'Oench, Duhme* has no relevance in this action. The agreement at issue here — and in *Beal Bank* — appeared explicitly in the failed bank's records. Moreover, when *D'Oench, Duhme* applies, it bars claims. It does not preserve them subject administrative exhaustion.

1   814(G), is invalid.   The FDIC and Enterprise scarcely develop this argument.  The Court
2   cannot say at this stage that the waiver of anti-deficiency is valid despite the statute. That
3   part of the motion to dismiss will be denied as well.

4       IT IS THEREFORE ORDERED that the "Motions to Intervene and Dismiss
5   Plaintiffs' Claims by Federal Deposit Insurance Corporation, as Duly Appointed
6   Receiver for First National Bank of Olathe" (Doc. 10) is GRANTED as to the FDIC's
7   request to intervene and otherwise DENIED.

8       Dated this 14th day of May, 2012.

_____
Neil V. Wake
United States District Judge